J-S21001-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| TODD MARKHORST | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRITTANY ANNE RUSKUSKI | : | |
| | : | |
| | : | No. 268 MDA 2026 |
| APPEAL OF: CHRISTOPHER AND | : | |
| AMBER MAYO | : | |

Appeal from the Order Entered February 4, 2026
In the Court of Common Pleas of Columbia County Civil Division at
No(s): 2021-CV-0000325-CU

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.: **FILED: JULY 1, 2026**

Christopher and Amber Mayo ("Adoptive Parents") appeal from the order denying their petition to reinstate their intervenor status to seek modification of the custody order pertaining to L.R.[1] We affirm.

By way of background, Brittany Anne Ruskuski ("Mother") gave birth to L.R. in March of 2021. Although Todd Markhorst ("Father") was aware that Mother had become pregnant, he did not know of L.R.'s birth because when the parties broke up, Mother advised Father she was going to get an abortion and then ceased all communication. Shortly after L.R.'s birth, Mother placed her in the custody of Adoptive Parents, who filed a report of intent to adopt L.R. on March 17, 2021. Thereafter, Mother executed a consent to adoption.

---

[1] While Adoptive Parents refer to the minor child as L.C.M., we utilize "L.R." because that is what appears in the record.

Upon learning of L.R.'s birth, Father filed a complaint against Mother on April 19, 2021, seeking sole physical and legal custody. Since Mother would not name Father as the biological father, he had to prove his paternity through DNA testing, which he did. Adoptive Parents filed a petition to intervene on September 17, 2021. While the custody matter proceeded, L.R. remained in the custody of Adoptive Parents, who moved to Tennessee.[2] The custody special master listed Adoptive Parents as a party, but as of June 22, 2023, no formal ruling on their petition to intervene had taken place. Relying in part upon **K.W. v. S.L.**, 157 A.3d 498 (Pa.Super. 2017), the court dismissed their petition to intervene. **See** Opinion, 6/22/23, at 3-4. The next day, the court entered an order directing Adoptive Parents to transfer physical custody of L.R. to Father by July 2, 2023. In light of the fact that L.R. had been in Adoptive Parents' custody for her entire two-year life, the court encouraged Father to maintain contact with them but left it to his discretion. Although Adoptive Parents timely appealed the order dismissing their petition to intervene to this Court, it was discontinued shortly thereafter at their request.

Nearly two years later, on May 30, 2025, Adoptive Parents moved to reinstate their intervenor or party status so that they could file a petition to modify the 2023 custody order. According to the motion, Father had initially permitted Adoptive Parents to have weekend visits with L.R., but stopped them in March 2025 and advised Adoptive Parents that they would have no

_____

[2] Mother did not participate in the custody matter.

further contact with L.R. Adoptive Parents assailed the dismissal of their petition to intervene and Father's failure to join them as parties to the custody suit. For context, they filed the motion *sub judice* so they could seek a custody modification granting them visitation rights. Father submitted an answer asking the court to dismiss the motion and Adoptive Parents authored a reply. On February 4, 2026, the trial court denied their motion.

This appeal followed. Despite being designated a children's fast track appeal, Adoptive Parents did not file their concise statement with their notice of appeal. **See** Pa.R.A.P. 1925(a)(i) ("The concise statement of errors complained of on appeal shall be filed and served with the notice of appeal."). One day after Adoptive Parents filed their late statement, the trial court authored a Rule 1925(a)(2)(ii) opinion. Therein, it explained that it lacked guidance from Appellants regarding what challenges they sought to raise on appeal because it had not received a concise statement. In support of its decision to deny the motion, the court referred us to its June 22, 2023 opinion regarding Adoptive Parents' right to intervene. The court further opined that because the matter was litigated in 2023, they should not be able to continue to lodge legal attacks to Father's custody of L.R.

In this Court, Adoptive Parents have raised four issues for our consideration:

> (1) Whether the trial court abused its discretion and/or committed an error of law by holding that [Adoptive Parents] were not joined as indispensable parties to the custody action, pursuant to Pa.R.Civ.P. 1915.6(a)(1), when they were mistakenly added to the action as "Appellants" in

the September 27, 2021 interim order that became a final order.

(2)     Whether the trial court abused its discretion and/or committed an error of law by holding that Father did not waive the issue of [Adoptive Parents]' standing when he failed to file exceptions to the trial court's June 14, 2022 interim order that became a final order.

(3)     Whether the trial court abused its discretion and/or committed an error of law when, despite the fact that [Adoptive Parents] were mandatorily joined as parties and Father waived the issue of standing, it dismissed [Adoptive Parents] from the custody action and ordered the transfer of custody of the minor child to Father in the order dated June 22, 2023.

(4)     Whether the trial court abused its discretion and/or committed an error of law by denying [Adoptive Parents]' motion to reinstate party/intervenor status and petition to modify custody in the order dated February 4, 2026?

Adoptive Parents' brief at 4 (cleaned up).

Preliminarily, we dispel the trial court's contention that Adoptive Parents are barred from requesting to be reinstated as an intervenor or party to the custody action.[3]  This Court has routinely rejected application of the doctrine

---

[3] The court referenced the doctrine of *res judicata*, which we have summarized thusly:

*Res judicata* bars the relitigation of issues that either were raised or could have been raised in the prior proceeding.  . . .

For *res judicata* to apply, there must be four common elements between the two actions:  (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties.  When examining these elements, a court may consider whether the factual allegations of both actions are the same, whether the same evidence is

*(Footnote Continued Next Page)*

of *res judicata* in custody matters because it is "a special creature. Unlike other actions which have a clear beginning, middle, and end, custody orders may be repeatedly modified."[4] **K.D. v. E.D.**, 267 A.3d 1215, 1224 (Pa.Super. 2021) (cleaned up). While we reject the trial court's invocation of this doctrine, we may still affirm the trial court's order denying Adoptive Parents' motion on any valid basis supported by the record. **See D.G. v. D.B.**, 91 A.3d 706, 712 (Pa.Super. 2014) (cleaned up).

Adoptive Parents argue that they should have been joined as parties at the outset of Father's custody complaint because, at the time, they had physical custody of L.R. **See** Adoptive Parents' brief at 9-10 (citing Pa.R.Civ.P. 1915.6(a)(1)). In light of their status as a party, they contend that prior counsel's petition to intervene was "redundant" and "moot." **Id**. at 10. Even so, they contend that Father waived any challenge to their standing as

---

necessary to prove each action and whether both actions seek compensation for the same damages. *Res judicata* may bar a second action based upon the same transaction even if additional grounds for relief are presented.

**Khalil v. Cole**, 240 A.3d 996, 1001–02 (Pa.Super. 2020) (cleaned up).

[4] In that vein, we note that the doctrine of collateral estoppel also would not apply because of the fluid nature of custody matters. **See M.W. v. S.T.**, 196 A.3d 1065, 1071 (Pa.Super. 2018) ("It would not make sense to permit a party to raise standing at any time, but then consider the factual circumstances as they existed at the time the complaint was filed for such fluid child custody cases. Accordingly, we hold the trial court did not err in considering the circumstances as they were at the time the petition to dismiss was filed when determining standing." (cleaned up); **accord T.M.H. v. J.L.**, 334 A.3d 860, 861 (Pa. 2025) (ordering, *inter alia*, a new custody hearing "to make a fresh assessment of standing").

intervenors by not objecting, and that this "precluded the trial court from dismissing [their] motion to intervene[.]" *Id*. at 11 (cleaned up). Ultimately, Adoptive Parents ask us to remand for the trial court to consider the merits of Adoptive Parents' request to have visitation rights because they should have earlier been made a party to the action or granted intervenor status. *Id*. at 13-14.

We consider these issues mindful of the fact that "threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." *M.W. v. S.T.*, 196 A.3d 1065, 1069 (Pa.Super. 2018) (cleaned up). Our Rules of Civil Procedure provide that if a non-parent party has custody of the child, they must be joined as a party pursuant to Rule 1915.6(a)(1), which provides:

> If the court learns from the pleadings or any other source that a parent whose parental rights have not been previously terminated **or a person who has physical custody of the child is not a party to the action, it shall order that the person be joined as a party.** Such person shall be served with a copy of all prior pleadings and notice of the joinder substantially in the form prescribed by Rule 1915.16(a).

Pa.R.Civ.P. 1915.6(a)(1) (emphasis added). Physical custody is defined as "the actual physical possession and control of a child[.]" Pa.R.Civ.P. 1915.1. Critically, party status alone does not grant to third parties the right to seek custody. We have explained:

> Although such a person may file a counterclaim for custody, partial custody[,] or visitation, these provisions do not grant a party standing to **seek** custody, where such standing would not otherwise exist. Thus[,] although a person who has physical

- 6 -

custody of a child who is the subject of a custody dispute must be joined as a party to the action, it remains that this third party lacks standing to seek custody as against a natural parent unless there is a *prima facie* right to custody.

***Van Coutren v. Wells***, 633 A.2d 1214, 1216 (Pa.Super. 1993) (cleaned up, emphasis in original).  As is relevant here, a third party may establish standing "by virtue of the parties' conduct, as in cases where a third party . . . has stood *in loco parentis*[.]"  ***J.A.L. v. E.P.H.***, 682 A.2d 1314, 1319 (Pa.Super. 1996) (cleaned up).

> The term *in loco parentis* literally means in the place of a parent. A person stands *in loco parentis* with respect to a child when he or she assumes the obligations incident to the parental relationship without going through the formality of a legal adoption.  The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties.  Critical to our discussion here, *in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of, the wishes of a parent.

***K.W.***, 157 A.3d at 504–05 (cleaned up).

Furthermore, "in child custody cases, the concept of standing is fluid[.]"

***E.A. v. E.C.***, 259 A.3d 497, 501 (Pa.Super. 2021) (cleaned up).  Therefore,

> principles of standing have been applied with particular scrupulousness because they serve a dual purpose:  not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

***M.W.***, 196 A.3d at 1069 (cleaned up).  Finally:

> It is important to recognize that in this context, the term *prima facie* right to custody means only that the party has a colorable claim to custody of the child.  The existence of such a colorable claim to custody grants standing only.  In other words, it allows the party to maintain an action to seek vindication of his or her

claimed rights. A finding of a *prima facie* right sufficient to establish standing does not affect that party's evidentiary burden: in order to be granted full or partial custody, he or she must still establish that such would be in the best interest of the child under the standards applicable to third parties.

***J.A.L.***, 682 A.2d at 1319 (cleaned up).

Presently, Adoptive Parents want to be able to file a motion to modify custody in order to secure enforceable visitation rights. In light of the foregoing, regardless of whether Adoptive Parents should have been joined as parties at the time Father initiated the custody litigation because they then had custody of L.R., the salient question is whether Adoptive Parents have standing to seek a custody modification.

To determine whether they established a *prima facie* right to custody, the trial court was required to assess the circumstances before it in 2025 when Adoptive Parents filed the motion *sub judice*. ***See M.W.***, 196 A.3d at 1071 (noting that "this Court has re-evaluated a party's standing following a factual change in circumstances, *i.e.*, the termination of parental rights or adoption" because "it would not make sense to permit a party to raise standing at any time, but then consider the factual circumstances as they existed at the time the complaint was filed for such fluid child custody cases" (cleaned up)); ***accord E.A.***, 259 A.3d at 504 ("[W]hile Maternal Grandmother may have had standing based upon the parents' disagreement prior to Father's death, the factual circumstances subsequently changed. The trial court erred in failing to consider that change of circumstances when determining whether Maternal

Grandmother had standing [as a grandparent] to pursue custody pursuant to [23 Pa.C.S] § 5325(2) at this junction.").

We stress that we are not unsympathetic to Adoptive Parents' complaints surrounding prior counsel's stewardship of this case or Father's unilateral termination of their visitation arrangement. Nor are we blind to the vital role they played for the first two years of L.R.'s life. Nevertheless, the record bears out that the circumstances changed significantly between the filing of their 2021 petition to intervene and the instant motion to reinstate intervenor or party status. As noted above, when Father filed his complaint for custody, Adoptive Parents had sole custody of L.R. When Adoptive Parents filed the 2025 motion, Father had exercised sole custody for approximately two years. Additionally, although Adoptive Parents had been permitted to see L.R. on weekends during that period, it had been several weeks since Adoptive Parents had visited L.R.

Plainly, at the time Adoptive Parents filed the motion to reinstate, they were not acting *in loco parentis* so as to support filing a motion to modify custody as intervenors because they were neither discharging parental duties nor assuming the role of a parent for L.R.[5] Based on the foregoing, we

_____

[5] We note that Adoptive Parents also could not have been deemed to be acting *in loco parentis* at the time they initially sought to intervene. Father immediately filed for custody upon learning of L.R.'s birth. When Mother refused to name him as the biological father, he obtained genetic testing and continued to pursue sole physical and legal custody of his daughter. While Adoptive Parents cared for L.R. during the pendency of the early stages of this

*(Footnote Continued Next Page)*

conclude that the trial court did not err in dismissing the motion *sub judice* because Adoptive Parents could not establish a *prima facie* right to custody.

Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/1/2026

---

case and at the behest of Mother, it is axiomatic that "a third party cannot place himself *in loco parentis* in defiance of the parents' wishes and the parent/child relationship." **K.W.**, 157 A.3d at 506 (cleaned up).